UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

In re: JERRY J. WAGNER
And SHANNON L. WAGNER

        Debtors,                                 Case No. 18-12862
                                                      Hon. Thomas L. Ludington
THOMAS MCDONALD, JR.
CHAPTER 13 TRUSTEE                          Bkr. No. 17-20394-dob
                                                      Hon. Daniel S. Opperman
        Appellant,
v.

WILDFIRE CREDIT UNION,

        Appellee.
_____/

## ORDER AFFIRMING BANKRUPTCY COURT

Chapter 13 Trustee Thomas W. McDonald ("Appellant" or "Chapter 13 Trustee") appeals an order of the Bankruptcy Court denying his request for attorney fees and costs. ECF No. 1. Appellant filed his brief on December 6, 2018. Notwithstanding the scheduling order (ECF No. 8), which set the Appellant Brief deadline as December 7, 2018, Appellant filed a "Corrected" brief on December 14. ECF No. 11. In addition to being untimely, the "Corrected" brief does not explain the nature of the "corrections" made to the initial brief, but rather leaves the reader to compare the two documents. Appellee Wildfire Credit Union filed its brief on January 3, 2019. ECF No. 12. Appellant did not file a reply.

The case history giving rise to the current dispute was summarized in the Bankruptcy Court's opinion denying Appellant's motion for attorney fees:

> The Debtors, Jerry and Shannon Wagner, claimed that a creditor, Wildfire Credit Union ("Wildfire"), violated the automatic stay by denying the use of their Debit Visa Card issued by Wildfire and by requiring the Debtors to talk to Wildfire about their recent Chapter 13 filing. The Chapter 13 Trustee and the United States

Trustee concurred with the Motion for Order to Show Cause filed by the Debtors. Wildfire denied it took any inappropriate action, but subsequently resolved its differences with the Debtors and the United States Trustee. The Chapter 13 Trustee claims that he is entitled to damages for attorney fees and costs incurred by virtue of the actions of Wildfire. Wildfire denies that it is responsible for any such damages. For the reasons stated in this Opinion, the Court denies the relief requested by the Chapter 13 Trustee.

The Debtors had various accounts with Wildfire and had access to their accounts via a Debit Visa Card. The Debtors also borrowed money to purchase a 2000 Jeep Wrangler and secured that loan with the Jeep. Given their financial condition, the Debtors filed a Chapter 13 petition with this Court on March 3, 2017. In their Chapter 13 Plan, the Debtors proposed to pay Wildfire equal monthly payments of $156.03 as a Class Five creditor. As alleged by the Debtors in their Motion for Order to Show Cause, the following occurred:

. . .

11. On March 22, 2017, approximately 12 days after the Plan was served and 19 days after the case was filed, Mrs. Wagner went to lunch with some coworkers and attempted to use her Credit Union Debit Visa Card. The transaction was declined, despite money being in the account. Mrs. Wagner had to borrow money from a co-worker for her lunch and suffered great embarrassment from this event.

12. Upon returning to work after her lunch, Mrs. Wagner sent a message through the Credit Union's secured messaging system. She received a response from "Kate" indicating that there was a temporary block on the card because the collections department wanted to know if she was reaffirming the loan. Mrs. Wagner was directed to call the collections department.

. . .

16. The collection agent that Mrs. Wagner spoke to advised her that the Credit Union had frozen the account. The agent spoke with her manager and advised Mrs. Wagner that the manager suggested the Wagners "pressure" the trustee into allowing the loan to be paid outside of the plan.

17. The Wagners were not forced to pay the automobile loan inside their Plan but chose to do so in order to receive Bankruptcy Code protection for that loan.

18. Further, the collections agent Mrs. Wagner spoke with, told Mrs. Wagner that if they left the vehicle loan in the Plan, their loan would go delinquent and they would lose good standing at the Credit Union, despite the fact that the Plan pays the automobile loan in full without modification.

19. The Credit Union did release the funds in the Wagners' account and reopen[sic] the debit card after this conversation, but did again advise the Wagners that they should pressure the Chapter 13 Trustee to allow the vehicle to be paid outside the plan.

20. The Wagners did not alter their Chapter 13 Plan in any way after this unlawful and abusive conversation with the collections agent at the Credit Union.

. . .[1]

30. The Credit Union's freezing of the Wagners' account on these occasions in order to pressure the Wagners to alter their Chapter 13 Plan amount to a form of extortion – withholding the Wagners' funds until they comply with the Credit Union's demands and violate the prohibitions established by 18 U.S.C. §152.

31. Further, when the Wagners, through their attorney, attempted to contact the Credit Union's attorney to resolve this issue they received no relief or explanation.

32. Despite having received notice of the bankruptcy, and despite the Wagners being current on their existing loan, the Credit Union had frozen their account for no reason other than to harass the Wagners and to get them to alter their Chapter 13 Plan.

(ECF No. 18, ¶ 9-32)

As a result, the Debtors requested the following relief:

A. The Respondent to show cause why it should not be held in contempt for violating 11 U.S.C. §362 and 524.

B. The Respondent to pay Debtors' actual damages, including costs and attorney fees associated with bringing the Motion for an Order to Show Cause, pursuant to the inherent contempt power of the Court under 11 U.S.C §105(a).

C. The Respondent to pay Debtors' costs and attorney fees pursuant to 11 U.S.C. §362(k) and 11 U.S.C. §105(a).

D. The Respondent to pay Debtors $1,000.00 in sanctions for each willful violation of the automatic stay, pursuant to 11 U.S.C. §362(k).

E. Any and all other relief deemed equitable, just, and proper.

(ECF No. 18, ¶ A-E)

---

[1] Paragraphs 21-29 alleged that the Debtors experienced continued difficulties using their debit card, and unsuccessfully attempted to resolve the issue with Wildfire Credit Union on multiple occasions.

In response, Wildfire generally denied the allegations of the Debtors and requested that the Court deny the relief and award attorney fees to Wildfire for defending the Motion. A few days after the response of Wildfire, both the United States Trustee and the Chapter 13 Trustee filed papers with the Court.

. . .

The Court opened discovery regarding all matters raised by the parties and conducted status conferences while the parties engaged in discovery and negotiated various resolutions. As a result, Wildfire was able to reach a resolution with the United States Trustee and with the Debtors. Specifically, as to the United States Trustee:

9. Without making any admissions, Wildfire agrees to cease and desist the enforcement of the ATM Card Policy. Specifically, Wildfire agrees to cease and [desist] the shutting off of ATM or debit card access for Wildfire account holders who file petitions under the U.S. Bankruptcy Code, unless other cause to do so as described below exists. Wildfire further agrees to institute policies and procedures to ensure compliance with this Court Order.

. . .

11. In return, the U.S. Trustee agrees and warrants that these policy changes by Wildfire will resolve any arguments the U.S. Trustee could bring regarding violations of the automatic stay for any of the conduct described above engaged in by Wildfire prior to the entry of this Order.

12. Specifically, the U.S. Trustee agrees that this Order resolves any issues regarding intentional violation(s) of the automatic stay under 11 U.S.C. § 362 by Wildfire for any conduct described above engaged in by Wildfire prior to the entry of this Order.

13. Wildfire acknowledges that this Order does not preclude any individual debtor(s) from potentially seeking damages under 11 U.S.C. § 362 for intentional or unintentional violations of the automatic stay based on the conduct described above.

(ECF No. 49, ¶ 9-13)

As to the Debtors, Wildfire agreed to pay the Debtors $3,000.00 and pay their attorney $3,100.00 for fees incurred by the Debtors. As a result, the only remaining party in interest was the Chapter 13 Trustee. Although the Chapter 13 Trustee was interested and concerned about the allegations regarding the Debit Visa Card, his concerns were broader. Specifically, the Chapter 13 Trustee pursued the allegations that Wildfire attempted to pressure the Debtors in either

> paying the Jeep loan outside of the Chapter 13 Plan or perhaps convince the Debtors to convert to Chapter 7 and then reaffirm their obligation with Wildfire. Accordingly, the Chapter 13 Trustee deposed various employees of Wildfire, but was unable to confirm the allegations made by the Debtors in their Motion. Subsequently, the Court was informed that the Chapter 13 Trustee requested attorney fees incurred by him in pursuing this matter. Wildfire denies that the Chapter 13 Trustee is entitled to any fees, and this Court heard oral argument on this issue on August 10, 2018. After consideration of the briefs and oral argument, the Court took this matter under advisement.

Opinion at 1-7, Bkr. ECF No. 73.

The Bankruptcy Court concluded that "the specific provisions of Section 362(k) limit those who can recover damages for a violation of the automatic stay. The Debtors being individuals, are eligible; the Chapter 13 Trustee is not." *Id.* at 10. The Bankruptcy Court also observed that the Debtors and Wildfire had settled their dispute as to the alleged violation of the automatic stay and the alleged damages arising therefrom, and that the settlement did not provide that the Trustee would be paid any money for his efforts at enforcing Section 362(k). Accordingly, The Bankruptcy Court denied the Chapter 13 Trustee's request for attorney fees. This appeal followed.

**I.**

Final orders of a bankruptcy court are appealable to a federal district court under 28 U.S.C. § 158(a). *In re Gourlay*, 496 B.R. 857, 859 (E.D. Mich. 2013). "Th[is] Court reviews a bankruptcy court's findings of fact for clear error and its conclusions of law de novo." *Id.* (citing *AMC Mortg. Co. v. Tenn. Dep't of Revenue,* 213 F.3d 917, 920 (6th Cir.2000)).

**II.**

First, Appellant contends that the Bankruptcy Court improperly "made findings of fact without conducting an evidentiary hearing despite contradictory allegations between Debtor's Motion for Sanctions and Appellee's responsive pleadings." Appellant Br. at 10. Specifically,

Appellant takes issue with the Bankruptcy Court's statement that "the concerns of the Chapter 13 Trustee regarding improper influence by the Appellee Wildfire Credit Union on the Debtors was (sic) not substantiated." Appellant Br. at 10 (quoting Op. at 11). Appellant then argues at length that his concerns *were* substantiated and, at a minimum, warranted an evidentiary hearing. That entire discussion is non-responsive to the Bankruptcy Court's conclusion that the Chapter 13 Trustee cannot recover damages under Section 362(k) for a violation of the automatic stay because the Chapter 13 Trustee (unlike the Debtors) is not an "individual" under Section 362(k). Op. at 10. Thus, irrespective of whether the Chapter 13 Trustee's concerns were substantiated, he cannot recover under Section 362(k).

Next, Appellant argues that "[a]lthough Courts have held that a Trustee is not an individual for purposes of damages under 11 U.S.C. 362, Courts have clearly held that the Trustee can be awarded the costs of attorney fees under the Court's inherent sanctions power pursuant to 11 U.S.C. 105 for automatic stay violations." Appellant Br. at 14-15. The Bankruptcy Court rejected this argument, finding that the specific provisions of Section 362(k) (which address the recoverability of damages for violations of the automatic stay) override the general provisions of Section 105 (which address the court's inherent sanctions power). Op. at 10. In support of its statutory interpretation, the Bankruptcy Court cited *RadLAX* for the proposition that, "when a general grant of authority or prohibition in a statute is contrary to a specific grant or prohibition . . . '[t]o eliminate the contradiction, the specific provision is construed as an exception to the general one.'" *Id.* (quoting *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012)).

This Court reaches the same conclusion on de novo review, as *RadLAX* is clearly supportive of the proposition for which it was cited and it squarely applies in this case. Appellant

cannot appeal to the court's general sanctions power under Section 105 to seek damages for a violation of the automatic stay. There is a specific provision governing the right to recovery for a violation of the automatic stay, namely Section 362(k), and Appellant concedes that Section 362(k)'s reference to an "individual" does not apply to him.

Appellant relies on *Pace*, a Ninth Circuit decision from 1995 which held that a trustee can recover damages as a sanction for ordinary civil contempt. *In re Pace*, 67 F.3d 187, 191 (9th Cir. 1995). As noted by the Bankruptcy Court, *RadLAX* is binding in this Court; *Pace* is not. Nor is *Pace* persuasive in that it pre-dated *RadLAX* and did not address the "general vs. specific" canon of statutory interpretation which was applied to the Bankruptcy Code in *RadLAX*.

The Bankruptcy Court also concluded that, to the extent discretionary sanctions were permissible pursuant to the court's inherent sanctions power under Section 105 (notwithstanding Section 362(k)), the conduct in this case did not warrant an award of sanctions. In response, Appellant argues that the Bankruptcy Court failed to hold an evidentiary hearing to resolve the inconsistent allegations in the Debtors' motion and the Appellee's responsive pleadings. This contention is without merit. The Bankruptcy Court's opinion reflects that the court "opened discovery regarding all matters raised by the parties and conducted status conferences while the parties engaged in discovery and negotiated various resolutions. As a result, Wildfire was able to reach a resolution with the United States Trustee and with the Debtors." Op. at 6. All parties were satisfied with the resolution, with the exception of the Appellant, who wanted to recover $7,400 for his role in uncovering Wildfire's alleged wrongdoing. To that end, the Bankruptcy Court entertained additional briefing and also held oral argument on August 10, 2018. There is no reason to believe that Appellant was denied the opportunity to present information in support of his motion. Appellant's contention that he was denied due process is without merit.

**III**.

Accordingly, it is **ORDERED** that the order of the Bankruptcy Court, Bkr. ECF No. 74, is **AFFIRMED.**

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: February 14, 2019